UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **LEONARD BORDEN** | § | |
| | § | W-21-CV-1276-ADA |
| V. | § | W-18-CR-054-ADA-5 |
| | § | |
| **UNITED STATES OF AMERICA.** | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is Petitioner Leonard Borden's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. ECF No. 256.[1] Also before the Court is Respondent United States of America's (the Government's) Response in opposition to the Motion. ECF No. 260. After reviewing Petitioner's Motion, the Government's Response, Petitioner's Reply, and the applicable law, the Court **DENIES** the Motion for the reasons stated below.

**I.    BACKGROUND**

Petitioner, federal prisoner number 56873-177, is a 42-year-old inmate at the Federal Correctional Institution in Herlong, California. See BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (search for Reg. No. 56873-177) (last visited April 25, 2022). His projected release date is January 4, 2035. Id.

In 2009, Waco Police Department investigators identified a heroin dealer in the local area. ECF No. 150 at 1. They also determined the dealer bought large quantities of heroin from Petitioner in Fort Worth. Id. On two occasions they arranged for the dealer to make controlled heroin buys from Petitioner. Id. at 2.

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in W-18-CR-054-ADA-5. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

On February 13, 2018, Petitioner was indicted for his drug-trafficking activities. ECF No. 3. At his re-arraignment hearing, he pled guilty to conspiring to possess and distributing heroin between 2009 and April of 2013:

> MS. SMITH-BURRIS: Mr. Borden.
>
> The grand jury charges: Beginning in or about 2009, the exact date unknown, and continuing until in or about April of 2013, in the Western District of Texas and elsewhere, the defendant, Leonard Borden, and others, both known and unknown to the grand jury, did unlawfully and willfully combine, conspire, confederate, and agree together, and with each other and others, to possess with the intent to distribute and to distribute a controlled substance, which offense involved a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and in violation of Title 21, United States Code, Section 846.
>
> THE COURT: Mr. Borden, do you understand the charge set forth in the indictment and read here by the government's attorney?
>
> DEFENDANT BORDEN: Yes, I do.
>
> THE COURT: Do you have any questions regarding what you're charged with or the range of punishment?
>
> DEFENDANT BORDEN: No, sir.
>
> THE COURT: As to the offense of conspiracy to possess with intent to distribute and distribution of heroin, a Schedule I controlled substance as alleged in the indictment, how do you plead, sir, guilty or not guilty?
>
> DEFENDANT BORDEN: I plead guilty.

ECF No. 246 at 24:1–25:2. He also agreed to the following factual summary:

> MS. SMITH-BURRIS: . . . [I]n 2009, investigator David Starr with the Waco Police Department, Drug Enforcement Unit, received information that an individual named Donta Stuart was selling heroin in the Waco, Texas area.  . . . .
> The investigation revealed that Stuart had been buying black tar heroin from Leonard Borden since at least March of 2009, that he began by buying quarter-ounce amounts and, at some point, began buying two ounces at a time up until he was buying from Borden approximately 15 ounces at a time. On two time -- two occasions during the investigation, agents with the Waco Police Department and

2

> DEA went to Fort Worth with Donta Stuart, and Donta Stuart conducted two one-ounce controlled buys of black tar heroin from Borden. On one of those occasions, surveillance saw Borden and Stuart meet with another individual in order to pick up the black tar heroin.
>
> . . . .
>
> THE COURT: All right. Is that what you did, sir?
>
> MR. FAULKNER: Your Honor, we just -- Mr. Borden agrees that he distributed some amount of heroin, just not with the exact amounts mentioned in the factual basis.
>
> THE COURT: All right. So noted. And your attorney will have the right to make any objections with respect to the quantities distributed at the time of sentencing.
> Is that -- other than that, is that what you did, Mr. Borden?
>
> DEFENDANT BORDEN: Yes, sir.
>
> THE COURT: And is that what you're pleading guilty to?
>
> DEFENDANT BORDEN: Conspiracy, yes, sir.
>
> THE COURT: And distribution of heroin?
>
> DEFENDANT BORDEN: Yes, sir.

Id. at 25:6–26:22.

Petitioner was sentenced to 235 months' imprisonment on April 26, 2019. ECF No. 240 at 2. He appealed the Court's "drug quantity determination and the resulting base offense level calculation." United States v. Borden, 799 F. App'x 890, 890 (5th Cir. 2020). His sentence was affirmed. Id. at 891. His petition for a writ of certiorari was denied on October 13, 2020. Borden v. United States, 141 S. Ct. 607 (2020).

Petitioner now claims in his Motion—signed on December 3, 2021—that his counsel provided constitutionally ineffective assistance. ECF No. 256 at 3–4. Specifically, he contends his counsel failed to (1) assert the five-year statute of limitations had run; (2) argue the

3

Government could not prove all the elements of the offense because the conspiracy was "interrupted from Nov. 2010 to Dec. 2012"; (3) oppose the Court relying on the 2018 Sentencing Guidelines; and (4) object to the Court considering his post-offense conduct at his sentencing. Id.

## II.  LEGAL STANDARD

Section 2255 " 'provides the primary means of collateral attack on a federal sentence.' " Pack v. Yusuff, 218 F.3d 448, 451 (5th Cir. 2000) (quoting Cox v. Warden, 911 F.2d 1111, 1113 (5th Cir. 1990)). But "it does not encompass all claimed errors in conviction and sentencing." United States v. Addonizio, 442 U.S. 178, 185 (1979). It identifies only four grounds on which a movant may obtain relief: (1) the "sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." United States v. Seyfert, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted). Consequently, it does not permit a claim of error that is neither constitutional nor jurisdictional unless the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962). It also requires a movant to bear the burden of establishing a claim of error by a preponderance of the evidence. Wright v. United States, 624 F.2d 557, 558 (5th Cir. 1980) (citing United States v. Kastenbaum, 613 F.2d 86, 89 (5th Cir. 1980)).

## III. Discussion

### A. Limitations

The Government maintains Petitioner's Motion is untimely and he is not entitled to equitable tolling. ECF No. 260 at 2.

A federal prisoner must normally file his motion under 28 U.S.C. § 2255 within one year from the date on which (1) the judgment became final; (2) the government-created impediment to filing the motion was removed; (3) the United States Supreme Court initially recognized, and made retroactively applicable to cases on collateral review, the legal predicate for the motion; or (4) the prisoner could have discovered, through due diligence, the factual predicate for the motion. 28 U.S.C. § 2255(f)(1)–(4).

" 'The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable.' " United States v. Petty, 530 F.3d 361, 364 (5th Cir. 2008) (quoting United States v. Patterson, 211 F.3d 927, 930 (5th Cir. 2000)). Equitable tolling is not, however, available for " 'garden variety claims of excusable neglect.' " Lookingbill v. Cockrell, 293 F.3d 256, 264 (5th Cir. 2002) (quoting Rashidi v. Am. President Lines, 96 F.3d 124, 128 (5th Cir. 1996)). Indeed, equitable tolling "is permitted only 'in rare and exceptional circumstances.' " Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002) (quoting Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998)). And because it is a discretionary doctrine, a court's "determination of whether equitable tolling applies 'turns on the facts and circumstances of a particular case.' " Clarke v. Rader, 721 F.3d 339, 344 (5th Cir. 2013) (quoting Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir.1999)).

The federal prisoner has the burden of proving his entitlement to equitable tolling. Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir. 2000). To satisfy his burden, he must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" of timely filing a § 2255 motion. Lawrence v. Florida, 549 U.S. 327, 336 (2007).

Petitioner does not assert in his Motion that a government-created impediment prevented him from timely filing his Motion. 28 U.S.C. § 2255(f)(2). He does not suggest the Supreme Court initially recognized the legal predicate for his Motion within the past year and made it retroactively applicable to cases on collateral review. Id. § 2255(f)(3). He also does not claim he recently discovered the factual predicate for his Motion. Id. § 2255(f)(4).

Petitioner's petition for writ of certiorari was denied by the Supreme Court on October 15, 2020. Borden, 141 S. Ct. at 607. His conviction, therefore, became final on that same day. United States v. Thomas, 203 F.3d 350, 356 (5th Cir. 2000). Thus, Petitioner had until October 15, 2021, to timely file a § 2255 motion. 28 U.S.C. § 2255(f)(1).

Petitioner constructively filed his Motion on December 3, 2021, the day he signed and presumably placed it in the prison mail system. ECF No. 256 at 5; See United States v. Patterson, 211 F.3d 927, 930 (5th Cir. 2000) (explaining a pro se prisoner's habeas corpus petition is constructively filed when the prisoner signs and presumably delivers the papers to prison authorities for mailing to the district court) (citing Spotville v. Cain, 149 F.3d 374, 376 (5th Cir. 1998)). Hence, Petitioner filed his Motion 49 days beyond the limitations period, and it is time barred unless equitable tolling applies.

When the Court screened Petitioner's Motion it made a preliminary determination that it was "time-barred." ECF No. 257 at 2. But it afforded Petitioner an opportunity to "explain any reasons why his application should not be dismissed as untimely." Id.; see Day v. McDonough, 547 U.S. 198, 210 (2006) (explaining that before entering a sua sponte dismissal of a writ of habeas corpus as untimely, due process requires that the "court . . . accord the parties fair notice and an opportunity to present their positions.").

6

In his response, Petitioner first argued the Court did not have jurisdiction in his criminal case because the statute of limitations had already run before he was indicted. ECF No. 258 at 1. He then asserted the Court should equitably toll the limitations because (1) his prison was in lockdown due to the coronavirus pandemic after March 2020 and he did not have access to legal materials; (2) his prison in Atlanta was locked down in July 2021 due to an investigation into illegal staff activities and he was shipped to Herlong in August 2021; (3) he contracted COVID-19 upon his arrival in Herlong and "[h]e is only now getting back his memory"; (4) his legal documents were misplaced or lost during his transfer to Herlong; and (5) he was denied "paper, stamps, or envelopes to mail" documents to the Court when he arrived at Herlong. Id. at 2–5. He maintained "that if not for the above listed matters [he] would have filed an in-time § 2255." Id. at 5–6.

**(1) Conspiracy Statute of Limitations**

Petitioner first claims the Court did not have jurisdiction in his criminal case because the statute of limitations had already run by the time he was indicted. ECF No. 258 at 1.

A narcotics conspiracy is governed by a five-year statute of limitations. 18 U.S.C. § 3282(a). A conspiracy is established when "the government . . . prove[s] beyond a reasonable doubt: (1) that an agreement to violate the narcotics laws existed between two or more persons, (2) that each alleged conspirator knew of the conspiracy and intended to join it, and (3) that each alleged conspirator did participate in the conspiracy." United States v. Maseratti, 1 F.3d 330, 337 (5th Cir. 1993). A conspiracy is ordinarily presumed to continue "unless that defendant makes a 'substantial affirmative showing of withdrawal, abandonment, or defeat of the conspiratorial

Case 6:18-cr-00054-ADA Document 262 Filed 05/11/22 Page 8 of 19

purpose.' " United States v. Puig-Infante, 19 F.3d 929, 945 (5th Cir. 1994) (quoting United States v. Branch, 850 F.2d 1080, 1082 (5th Cir.1988).

The Indictment—entered on February 13, 2018—alleged Petitioner conspired to distribute heroin "until April 2013." ECF No. 3 at 1. Consequently, the Indictment was brought against Petitioner less than five years after the conspiracy ended. So the statute of limitations had not run at the time Petitioner was indicted for the conspiracy to possess and distribute heroin— and the Court could exercise jurisdiction in Petitioner's criminal case.

Petitioner now claims he did "stipulate to a sale of drugs in 2013 but did not verify a sale on Feb. $1^{st} – 28^{th}$." ECF No. 256 at 3. Thus, he argues "the 5 yrs had come and gone." Id. Notably, he does not assert he withdrew from the conspiracy. He only suggests the conspiracy "was interrupted from Nov. 2014 till Dec. 2012." Id. Still, he agreed under oath at his re-arraignment that "[b]eginning in or about 2009, the exact date unknown, and continuing until in or about April of 2013." ECF No. 246 at 24:1–25:2.

"Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977). As a result, "a defendant ordinarily will not be heard to refute [his] testimony given at a plea hearing while under oath." United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998) (citing United States v. Fuller, 769 F.2d 1095, 1099 (5th Cir. 1985)).

Under these circumstances, the Court will not permit Petitioner to now disavow his statement at his re-arraignment concerning his participation in a conspiracy which ended in April of 2013. The Court finds that Petitioner has not established the statute of limitations ran before he was indicted, and that it could exercise jurisdiction in Petitioner's criminal case.

8

**(2) Lockdown**

Petitioner claims his prison was in constant lockdown due to the coronavirus pandemic after March 2020 and, consequently, he did not have access to legal materials. ECF No. 258 at 2.

An institutional lockdown alone is generally not a rare and exceptional circumstance which warrants equitable tolling. See Lewis v. Casey, 518 U.S. 343, 362 (1996) ("[L]ockdown prisoners routinely experience delays in receiving legal materials or legal assistance . . . but so long as they are the product of prison regulations reasonably related to legitimate penological interests, such delays are not of constitutional significance, even where they result in actual injury."). Furthermore, an institutional lockdown when combined with a § 2255 petitioner who fails to provide evidence that he pursued his rights diligently will clearly not warrant equitable tolling. Lawrence, 549 U.S. at 336.

Petitioner was sentenced on April 26, 2019. ECF No. 240 at 2. He claimed in his Motion that his counsel provided ineffective assistance before and during his sentencing. ECF No. 256 at 3–4. He knew or should have known the nature of his claims at the time of his sentencing. He reported his prison was in lockdown due to the coronavirus pandemic in March 2020—nearly a year after his sentencing. ECF No. 258 at 2. The pandemic and the procedures taken by prison officials to address it may have made it more difficult for Petitioner to complete and file his Motion. But the pandemic and the procedures implemented to ameliorate its impact on prisoners did not prevent Petitioner from filing a motion. Consequently, Petitioner has not presented facts or evidence suggesting he exercised reasonable diligence in pursuing his rights. Therefore, Petitioner "has not alleged circumstances that entitle him to tolling." United States v. White, No. CR 16-40, 2022 WL 888404, at *3 (E.D. La. Mar. 25, 2022).

### (3) Transfer / Lost Legal Documents

Petitioner claims his prison in Atlanta was locked down in July 2021 due to an investigation into illegal staff activities and he was shipped to Herlong in August 2021. ECF No. 258 at 2–3. Petitioner also claims his legal documents were misplaced or lost during his transfer. Id. at 3.

Prisoner "transfers have become commonplace." Lucero v. Suthers, 16 F. App'x 964, 965 (10th Cir. 2001). They generally do "not constitute extraordinary circumstances" that warrant equitable tolling. Paulcin v. McDonough, 259 F. App'x 211, 213 (11th Cir. 2007). "To hold otherwise would characterize as 'rare and exceptional' circumstances that countless other prisoners could claim as their own." Felder v. Johnson, 204 F.3d 168, 173 (5th Cir. 2000).

Petitioner's purported lack of access to legal materials is likewise not an extraordinary circumstance warranting equitable tolling. United States v. Thierry, No. 07-20055-001, 2011 WL 2268133, at *3 (W.D. La. June 1, 2011); see also Mathison v. United States, 648 F. Supp. 2d 106, 112 (D.D.C. 2009) ("Neither plaintiff's transfer from one prison to another nor his placement in a housing unit without legal materials is an extraordinary circumstance to warrant tolling of the limitations period."); United States v. Brittain, 41 F. App'x 246, 249 (10th Cir. 2002)) (finding that a prisoner's "transfers to and from various prisons were not exceptional circumstances and, while inconvenient, did not rise to such a level that they prevented [him] from timely filing" his § 2255 motion, and that his "allegations regarding the inadequacies of the available legal materials for inmates with visual impairments were likewise insufficient"). "Moreover, even if the delays in receiving whatever documents he believed necessary could be considered extraordinary, [Petitioner] has not shown that he made any effort to file his petition

10

without them, or filed his petition promptly after he obtained them." Thierry, 2011 WL 2268133, at *3.

In short, Petitioner's transfer and the "resulting in separation from legal papers are not rare and extraordinary and do not warrant equitable tolling." United States v. Cockerham, No. 12-714, 2012 WL 12867870, at *2 (W.D. Tex. Aug. 27, 2012) (citing Dodd v. United States, 365 F.3d 1273, 1283 (11th Cir. 2004)).

**(4) Contracting COVID**

Petitioner claims that on or about July 27, 2021, he was shipped to Herlong where "the staff . . . gave [him] COVID-19." ECF No. 528 at 3. He adds "[h]e is only now getting back his memory of events as to the Court's actions." Id. at 3–4.

To establish an entitlement to equitable tolling, a prisoner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" of timely filing a § 2255 motion. Lawrence, 549 U.S. 336. When a prisoner fails to establish he diligently pursued his right to file a § 2255 motion before the COVID-19 lockdown, district courts generally conclude the prisoner is not entitled to equitable tolling. See, e.g., United States v. Thomas, No. CR 18-135, 2020 WL 7229705, at *3 (E.D. La. Dec. 8, 2020) ("[T]he Court finds that Petitioner did not diligently pursue his right to file the instant § 2255 motion, and thus, he is not entitled to equitable tolling."); United States v. Barnes, No. 18-CR-0154-CVE, 2020 WL 4550389, at *2 (N.D. Okla. Aug. 6, 2020) ("Even assuming that a lockdown due to the COVID-19 pandemic delayed defendant's ability to file his motion, it does not explain the more than one-year delay."); United States v. Mayfield, No. 4:16-CR-3077, 2020 WL 1663582, at *1 (D. Neb. Apr. 3, 2020) (holding that when, "as a result of the COVID-19 pandemic, his

access to the law library has been limited, preventing him from completing his motion," equitable tolling would only be appropriate if the motion "was diligently pursued"). When, on the other hand, a prisoner shows the COVID-19 pandemic interrupted his diligent pursuit of his right to file a § 2255 motion, district courts may conclude the prisoner is entitled to equitable tolling. See Huskey v. Fisher, No. 1:17CV140-JMV, 2022 WL 1297178, at *9 (N.D. Miss. Apr. 29, 2022) (holding the closure of the Inmate Legal Assistance Program office during the COVID pandemic was an "extraordinary circumstance [which] prevented Huskey from timely filing his motion, and he diligently pursued the motion before the deadline expired. Thus . . . the doctrine of equitable tolling . . . applies in this case."); Fitzgerald v. Shinn, No. CV-19-5219-PHX-MTL, 2020 WL 3414700, at *2 (D. Ariz. June 22, 2020) ("Petitioner asserts that despite prompt requests for records related to his case and personal background, including court records, educational, employment, military, vital, court, institutional, and medical and mental health records, some requests remain unfulfilled.   . . . Petitioner's assertion that COVID-19 is interfering with his ability to investigate his claims is supported by declarations from members of his defense team.").

Petitioner was subjected to COVID-19 measures beginning in March 2020. Barnes, 2020 WL 4550389, at *2. His conviction became final on October 15, 2020. Borden, 141 S. Ct. at 607; Thomas, 203 F.3d at 356. Hence, he was subject to COVID-19 protective measures when his conviction became final. But Petitioner had one year—or until October 15, 2021—to timely file a § 2255 motion. 28 U.S.C. § 2255(f)(1). And he had over nine months to file a § 2255 motion before he contracted COVID-19. Yet he waited until December 3, 2021, to seek § 2255 relief.

ECF No.256 at 5. Consequently, he has not shown that he was diligently pursuing his rights, and he has not established an entitlement to equitable tolling.

### (5) Denied Stamps

Finally, Petitioner claims that when he arrived at Herlong on or about July 27, 2021, he was denied notebook paper, stamps, and envelopes to mail a change of address and presumably other documents to the Court. ECF No. 528 at 3, 7.

Again, Petitioner's conviction became final on October 15, 2020. Borden, 141 S. Ct. at 607; Thomas, 203 F.3d at 356. He likely had access to paper, stamps, and envelopes before his transfer. He managed to file his Motion after he arrived at Herlong. Consequently, he cannot show he diligently pursued § 2255 relief. He has not met his burden of showing an entitlement to equitable tolling.

### (6) Findings

The Court finds Petitioner was indicted before the statute of limitations ran,    Petitioner's Motion was time-barred, and he was not entitled to equitable tolling. The Court additionally finds Petitioner is not entitled to relief on the merits of his claims.

### B. Ineffective Assistance of Counsel

Petitioner contends his counsel provided constitutionally ineffective assistance when he failed to (1) assert the five-year statute of limitations had run; (2) argue the Government could not prove all the elements of the offense because the conspiracy was "interrupted from Nov. 2010 to Dec. 2012"; (3) oppose the Court relying on the 2018 Sentencing Guidelines; and (4) object to the Court considering his post-offense conduct at his sentencing. ECF No. 256 at 3–4.

A petitioner's ineffective-assistance-of-counsel claim is analyzed under the two-pronged test in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail, a petitioner must show (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense. Strickland, 466 U.S. at 689–94. To establish deficient performance, a petitioner must show that his counsel's assistance fell " 'below an objective standard of reasonableness.' " United States v. Conley, 349 F.3d 837, 841 (5th Cir. 2003) (quoting Strickland, 466 U.S. at 688). In the context of a guilty plea, a petitioner shows prejudice by establishing "there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). If a petitioner fails to prove one prong, the reviewing court need no analyze the other. See Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

**(1) Statute of Limitations**

Petitioner asserts his counsel provided ineffective assistance because he "failed to object to jurisdiction" when the five-year statute of limitations had run before his indictment. ECF No. 256 at 3. He claims he "did stipulate to a sell [sic] of drugs in 2013 but did not verify a sale on Feb. 1st – 28th." Id.

The Court has already observed that Petitioner was indicted for his drug-trafficking activities on February 13, 2018. ECF No. 3. It has also noted Petitioner pled guilty to a

14

conspiracy "continuing until in or about April of 2013." ECF No. 246 at 24:1–25:2. So Petitioner was indicted within the five-year statute of limitations. 18 U.S.C. § 3282(a).

Counsel's objection to the Court's jurisdiction would have been futile. " '[C]ounsel is not required to make futile motions or objections.' " Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002) (quoting Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990)).

**(2) Insufficiency of the Evidence**

Petitioner argues his counsel provided ineffective assistance since the Government could not prove all the elements of the offense because the conspiracy was "interrupted from Nov. 2010 to Dec. 2012." ECF No. 256 at 3. He suggests he is "legally innocent." Id.

"A drug-trafficking conspiracy requires: '(1) the existence of an agreement between two or more persons to violate narcotics laws, (2) knowledge of the conspiracy and intent to join it, and (3) voluntary participation in the conspiracy.' " United States v. McClaren, 13 F.4th 386, 406 (5th Cir. 2021), cert. denied sub nom. Fortia v. United States, 142 S. Ct. 1244 (2022) (quoting United States v. Nieto, 721 F.3d 357, 367 (5th Cir. 2013) (citation and quotation marks omitted)). "Direct evidence of a conspiracy is unnecessary; each element may be inferred from circumstantial evidence. . . . An agreement may be inferred from a 'concert of action.' " United States v. Casilla, 20 F.3d 600, 603 (5th Cir.1994) (quoting United States v. Cardenas, 9 F.3d 1139, 1157 (5th Cir.1993)). "Once the government presents evidence of a conspiracy, it only needs to produce slight evidence to connect an individual to the conspiracy." United States v. Virgen-Moreno, 265 F.3d 276, 285 (5th Cir. 2001).

Petitioner does not dispute the factual summary of his offense presented at his plea hearing. See ECF No. 246 at 25:6–26:22. He does not disclaim his admission that he conspired

15

with Donta Stuart to distribute heroin, they both knew of the conspiracy and intended to join it, and they both participated in the conspiracy. Id. He merely claims there was a brief interruption in the conspiracy. ECF No. 256 at 3. Thus, he admits—under oath—to all the elements of a drug-trafficking conspiracy.

Petitioner's admissions directly contradict his ineffective assistance of counsel claim. Thus, he fails to demonstrate deficient performance or that but for the actions of his counsel he would have exercised his right to trial or received a reduced sentence. See Hill, 474 U.S. at 58.

### (3) Sentencing Guidelines

Petitioner observes the drug-trafficking conspiracy occurred between 2009 and 2013. He avers his counsel provided ineffective assistance because he failed to object when the Court relied on the 2018 Sentencing Guidelines. ECF No. 256 at 4.

"Generally, a district court 'must apply the version of the sentencing guidelines effective at the time of sentencing unless application of that version would violate the Ex Post Facto Clause of the Constitution.' " United States v. Myers, 772 F.3d 213, 218 (5th Cir. 2014) (quoting United States v. Rodarte–Vasquez, 488 F.3d 316, 322 (5th Cir.2007) (citation omitted)); U.S. SENT'G GUIDELINES MANUAL § 1B1.11(a) (U.S. SENT'G COMM'N 2018).

"Sentencing Guidelines Amendment 782 became effective on November 1, 2014. . . . It modified the drug-quantity table in Section 2D1.1 of the Guidelines by lowering most drug-related base-offenses levels by two." United States v. Morgan, 866 F.3d 674, 675 (5th Cir. 2017) (emphasis added).

"[H]ad Petitioner been sentenced under the 2013 Guidelines his sentence likely would have been higher." ECF No 260 at 3. Hence, the application of the 2018 Guidelines did not

violate the Ex Post Facto Clause of the Constitution. Petitioner cannot show his counsel's performance was either deficient or prejudiced his cause when he failed to challenge the application of the 2018 Sentencing Guidelines.

**(4) Post-Offense Conduct**

Petitioner finally complains his counsel provided ineffective assistance when he failed to object to the Court considering his post-offense conduct at his sentencing. ECF No. 256 at 4.

"A district court may consider all 'relevant conduct' when fashioning a sentence." United States v. Bacon, 646 F.3d 218, 221 (5th Cir. 2011) (citing United States v. Fowler, 216 F.3d 459, 461 (5th Cir. 2000)). It "may consider non-adjudicated offenses (offenses for which the defendant has neither been charged nor convicted) that occur after the offense of conviction, provided they constitute 'relevant conduct' under U.S.S.G. § 1B1.3. United States v. Brummett, 355 F.3d 343, 344 (5th Cir. 2003); see also Wasman v. United States, 468 U.S. 559, 572 (1984) (explaining a court "may justify an increased sentence by affirmatively identifying relevant conduct or events that occurred subsequent to the original sentencing proceedings."). For "unadjudicated offenses . . . to rise to the level of 'relevant conduct', they [have] to be 'part of the same course of conduct or common scheme or plan as the offense of conviction.' " United States v. Vital, 68 F.3d 114, 118 (5th Cir. 1995) (quoting U.S. SENT'G GUIDELINES MANUAL § 1B1.3(a)(2)).

Counsel explained he "did not object to criminal acts committed after the offense alleged as the Guidelines specifically allow[ed] for consideration of such conduct." ECF No. 260-1 at 2. Counsel's objection to the Court's consideration of post-offense conduct under the circumstances

of this case would have been futile. Once again, " 'counsel is not required to make futile motions or objections.' " Johnson, 306 F.3d at 255.

### (5) Findings

The Court finds Petitioner has not met his burden of showing either his counsel's performance was deficient, or the deficient performance prejudiced the defense. Strickland, 466 U.S. at 689–94. The Court finds Petitioner has not established his counsel provided constitutionally ineffective assistance.

## IV. CERTIFICATE OF APPEALABILITY

A judge or circuit justice must issue a certificate of appealability before a petitioner may appeal a final order in a habeas corpus proceeding. 28 U.S.C. § 2253(c)(1)(B).  A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (applying Slack to certificate of appealability determination in context of § 2255 proceedings). To warrant a certificate as to claims a district court rejects solely on procedural grounds, a petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

Here, reasonable jurists would not debate the Court's conclusions that Petitioner's motion is time barred and that he is not entitled to equitable tolling.  Reasonable jurists would also not find that the issues presented are adequate to deserve encouragement to proceed. Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack, 529 U.S. at 484).

Thus, the Court will not issue a certificate of appealability.

## V. CONCLUSION

The Court concludes that Petitioner's claims are time barred and that he is not entitled to equitable tolling. The Court further concludes that Petitioner is also not entitled to a certificate of appealability. Accordingly, the Court enters the following orders:

**IT IS ORDERED** that Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 256) is **DENIED**, and his civil cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Petitioner is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

**IT IS FURTHER ORDERED** that all pending motions in this cause are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**IT IS SO ORDERED.**

**SIGNED** this 11th day of May, 2022.

_____
**ALAN D ALBRIGHT**
**UNITED STATES DISTRICT JUDGE**